IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMGLO KEMLITE LABORATORIES, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> BUREAU OF CITIZENSHIP AND ) <br> IMMIGRATION SERVICES, ) <br> ) <br> Defendant. ) | Case No. 07 C 945 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Amglo Kemlite Industries, Inc. ("Amglo") filed suit against the United States Bureau of Citizenship and Immigration Services ("CIS") under the Administrative Procedure Act, 5 U.S.C. § 706, seeking to overturn CIS's decision to deny Amglo's petition for an H-1B visa for its employee, Rico Schulz. Both parties have moved for summary judgment. For the reasons set forth below, the Court denies Amglo's motion and grants CIS's motion.

### Background

On February 7, 2006, Amglo filed an I-129 petition for nonimmigrant worker on behalf of Mr. Schulz, one of its engineering employees. In the petition, Amglo applied for an "H-2B" temporary worker classification, which covers aliens who come to the United States temporarily to perform temporary services or labor. Amglo also filed a "premium processing petition" along with its application, which allowed CIS to expedite the petition's processing. CIS processed Amglo's petition through its Nebraska Servicing Center and assigned the petition the number

LIN 06 092 71742. On February 21, 2006, CIS sent Amglo a request for further evidence relating to the petition. Amglo provided the requested evidence, and CIS approved Mr. Schulz's H-2B temporary worker classification on March 29, 2006. This classification was valid from April 1, 2006 to October 1, 2006.

On May 24, 2006, Amglo filed a second petition for nonimmigrant worker on behalf of Mr. Schulz. In this petition, Amglo sought an "H-1B" classification, which applies to an alien performing services in a specialty occupation. Amglo also filed a premium processing petition along with the H-1B application.

CIS's Vermont Service Center processed the H-1B application, notified Amglo that it had received the petition, and assigned the petition the number EAC 06 175 52163. On June 7, 2006, CIS issued a Notice of Action to Amglo requesting further evidence to support the H-1B petition. In the notice, CIS asked Amglo to provide evidence to support the contention that Mr. Schulz's position qualified as a specialty occupation. Specifically, CIS requested that Amglo establish the degree required to perform the duties of the position; provide a statement indicating who had performed these duties in the past and the educational achievements of that person, along with documentary evidence to support the claim, such as pay stubs and educational documents of the previous employee; and submit the job posting used to fill the position. In the notice, CIS informed Amglo that its response must be received by September 2, 2006. This gave Amglo twelve weeks to respond.

Amglo did not respond to the Notice of Action, and on September 15, 2006, the Vermont Service Center informed Amglo that CIS had denied the H-1B petition due to "abandonment." CIS further notified Amglo that a denial due to abandonment could not be appealed but that

Amglo could file a motion to reopen the petition with evidence that the decision was in error for one or more of the following reasons: 1) the evidence that CIS requested was not material to the issue of Mr. Schulz's eligibility; 2) the required evidence was already submitted with the application, or the request for additional information was complied with during the allotted period; or 3) CIS had sent the request for additional information to an address other than that on the application.

On October 2, 2006, Amglo filed a motion to reopen the case. Amglo argued that CIS's decision to deny the petition for abandonment was incorrect because Amglo had already responded to the request for further evidence. However, the motion referenced the evidence that Amglo had sent in response to the earlier H-2B petition it had filed for Mr. Schulz back in February 2006, not any evidence Amglo had provided in connection with the later H-1B petition. Amglo also attached to the motion to reopen the same evidence it had sent in support of the original H-2B petition. Finally, Amglo sent its motion to reopen to the Nebraska Service Center, which had processed the earlier H-2B petition, not to the Vermont Service Center, which had processed the H-1B petition and which had sent the request for additional evidence.

On January 19, 2007, CIS denied Amglo's motion to reopen the case, stating that Amglo had not met any of the three criteria necessary to permit a case to be reopened. CIS noted in its decision that Amglo had not responded to the request for evidence and that with its motion to reopen, Amglo had re-submitted evidence supporting a previous petition, not the pending H-1B petition.

Amglo then filed this suit seeking a declaratory judgment and injunctive relief. Both sides have moved for summary judgment.

**Discussion**

Under the Administrative Procedure Act, a court reviewing an administrative agency's decision decides relevant questions of law, interprets statutory provisions as necessary, and may set aside agency actions, findings, and conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 706; *Environmental Law and Policy Ctr. v. U.S. Nuclear Regulatory Comm'n*, 470 F.3d 676, 682 (7th Cir. 2006).

Amglo argues that CIS's decision to deny its H-1B petition was arbitrary, capricious and an abuse of discretion. It contends there was no need for CIS to request additional evidence. Specifically, Amglo argues that the evidence it had provided to support the petition was sufficient and that because Mr. Schulz had previously been approved for an H-2B visa, it had already been established that he was qualified to work as an engineer.

In support of its H-1B petition, Amglo provided a description of Mr. Schulz's proposed duties; the "Labor Condition Application" certified by the U.S. Department of Labor; proof that Mr. Schulz had the equivalent of a bachelor's and master's degree in engineering, including copies of these degrees; a letter concerning Amglo's financial status; and the earlier H-2B approval notice. Amglo contends this evidence should have sufficed for the H-1B application and that the additional evidence CIS requested was therefore duplicative. Amglo also argues that because Mr. Schulz had previously worked in the same position under an H-2B nonimmigrant visa, CIS's request, in response to the later H-1B application, for a statement of who had performed the job in the past and what his educational achievements were, was unnecessary. Finally, Amglo contends that because there is no requirement in the pertinent statute or regulations that a position be posted before it can be the subject of an H-1B petition, CIS could

not properly base a denial of the petition on the failure to produce that evidence.

Amglo's second argument is that CIS's request for evidence deviated from the procedures required to give Amglo adequate notice that additional evidence was necessary. Amglo contends that there is a standard request for evidence form, which is titled - in bold letters - **<u>REQUEST FOR EVIDENCE</u>**. Amglo asserts that because CIS's request was not in this format, it should not be considered a proper request for evidence, and as a result it was erroneous for CIS to base the denial on Amglo's failure to respond to the notice.[1]

CIS argues that Amglo's contentions were not raised during the administrative proceedings and that as a result it has forfeited those contentions.[2] CIS also argues that Amglo's contentions are lacking in merit. CIS argues that the Immigration and Nationality Act ("INA") and the pertinent regulations required Amglo to provide, in support of its H-1B petition, evidence showing that Mr. Schulz's work constituted a specialty occupation. When CIS requested such evidence, Amglo did not respond. CIS also argues that even if the materials included in Amglo's motion to reopen had been considered, they did not establish that Mr. Schulz's work constituted a specialty occupation. Finally, CIS argues that the Notice of Action, in which it requested the additional evidence, was sufficient to provide Amglo with fair notice that it needed to submit the

---

[1] Amglo also argues that CIS routinely requests additional evidence in an attempt to side-step the expedited premium processing deadline, and that this is the case here. Because Amglo has offered no evidentiary support for this assertion, the Court finds that it has forfeited the argument.

[2] At least some of Amglo's arguments were not raised in its motion to reopen and thus are likely forfeited. *See Wood v. Thompson,* 246 F.3d 1026, 1033 (7th Cir. 2001). But because the Court concludes that Amglo's arguments are lacking in merit, it will deal with the arguments on the merits rather than relying on forfeiture.

additional materials requested.

The Court concludes that Amglo failed to meet its burden of establishing that Mr. Schulz was eligible for H-1B status because it offered insufficient proof that his work constituted a specialty occupation. Both the INA and the pertinent regulations require an H-1B applicant to establish that the beneficiary will be employed in a specialty occupation. 8 U.S.C. § 1184(i); 8 C.F.R. § 214.2(h)(4). The burden of proof rests on the visa applicant to establish that the beneficiary is eligible to receive a visa. 8 U.S.C. § 1361; *Shanti, Inc. v. Reno*, 36 F. Supp. 2d 1151, 1154 (D. Minn. 1999). To qualify for H-1B status, the applicant must satisfy a two-part test: the position must qualify as a "specialty occupation," and the alien must be qualified to perform services in the position. *Shanti*, 36 F. Supp. 2d at 1153; *EG Enter., Inc. v. Dept. of Homeland Security*, 467 F. Supp. 2d 728, 734 (E.D. Mich. 2006).

Under the INA, a specialty occupation is one that requires:

(A)  theoretical and practical application of a body of highly specialized knowledge; and

(B)  attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States.

8 U.S.C. § 1184(i)(1)(A)-(B). The INA also requires that the prospective employee satisfy one of the following requirements:

(A)  full state licensure to practice in the occupation, if such licensure is required to practice in the occupation;

(B)  completion of the degree described in paragraph (1)(B) for the occupation; or

(C)  (i) experience in the specialty equivalent to the completion of such degree, and (ii) recognition of expertise in the specialty through progressively responsible positions relating to the specialty.

6

*Id.* § 1184(i)(2)(A)-(C).

The corresponding regulations include engineering among the examples of specialty occupations that require theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor. 8 C.F.R. § 214.2(h)(4)(ii). These regulations also require, however, that to meet the standard for a specialty occupation, the position must satisfy one of the following criteria:

(1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;

(2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that this particular position is so complex or unique that it can be performed only by an individual with a degree;

(3) The employer normally requires a degree or its equivalent for the position;

(4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A)(1)-(4).

These regulatory requirements speak not to the *applicant's* knowledge or education, but to the *occupation's* minimum requirements. *See Defensor v. Meissner*, 201 F.3d 384, 387-88 (5th Cir. 2000). Thus, an employer may not make an end run around the specialty occupation requirements by hiring an alien with a college education for an occupation that does not require that level of education. *Id.* (noting that any other interpretation of the regulations would lead to absurd results because it would allow any alien with a bachelor's degree to qualify for a visa to work in any occupation in the United States).

In addition to requiring the occupation to qualify as a specialty occupation, the governing

regulations also require the petitioner and the beneficiary to satisfy certain requirements, including one of four possible qualifications on the part of the employee-beneficiary. 8 C.F.R. § 214.2(h)(4)(iii)(C). The second of these qualifications, and the only one Amglo claims applies, is that the beneficiary holds "a foreign degree determined to be equivalent to a United States baccalaureate or higher degree required by the specialty occupation from an accredited college or university." *Id.*

It is undisputed that Mr. Schulz met this beneficiary requirement because he holds foreign degrees that are determined to be the United States' equivalent of both a bachelor's degree and master's degree in mechanical engineering. Amglo failed to establish, however, the first element of the two-part test: that Mr. Schulz's position qualified as a specialty position.

It is readily apparent that when CIS requested further evidence from Amglo, it was searching for evidence to establish that Mr. Schulz's engineering position qualified as a specialty occupation, an essential element for granting H-1B status. CIS notes that its *Adjudicator's Field Manual* encourages adjudicators to use the *Occupational Outlook Handbook* ("Handbook") to determine the specific vocational preparation necessary for various occupations. The Handbook states that for engineering technician jobs, "most employers prefer to hire someone with at least a 2-year associate degree in engineering technology." *See* http://www.bls.gov/oco/ocos112.htm (last visited Mar. 8, 2008). CIS argues that it is reasonable to conclude that someone with only a two year degree could qualify for a position as an engineering technician. For this reason, CIS sought evidence that Mr. Schulz's position required more than a two year degree and thus qualified as a specialty occupation under applicable CIS regulations.

In this regard, CIS requested that Amglo establish the degree required to perform the

8

duties of the position; identify who had performed these duties in the past along with his educational achievements, including supporting evidence; and submit the job posting used to fill the position. Such evidence, if offered by Amglo, could have shown that it had a history of hiring employees for Mr. Schulz's position who had at least a bachelor's degree or the equivalent in the particular field. But absent such information, Amglo had submitted no evidence to CIS in connection with the H1-B application to establish that Mr. Schulz's position qualified as a specialty position. Rather, the evidence that Amglo had submitted (the Labor Condition Application; proof that Mr. Schulz had the equivalent of a bachelor's and master's degree, and copies of these degrees; Amglo's financial status letter; and the H-2B approval notice) supported only that Mr. Schulz was a qualified beneficiary. In other words, Amglo had met only one of the two requirements for approval of the H1-B application.

Amglo argues that because CIS must have been aware that it had granted Mr. Schulz an H-2B visa as a chief engineer, it had no need for further documentation that Mr. Schulz met the qualifications of an engineer. This argument essentially ignores the fact that CIS was looking for evidence to establish that the position qualified as a specialty occupation, not that Mr. Schulz was a qualified beneficiary. Because the documentation needed to obtain the H-2B visa does not include evidence of a specialty occupation, further evidence was necessary to satisfy CIS that the requirements for an -1B visa were satisfied. As an H-2B visa holder, Mr. Schulz simply was not granted "the same status" as an H-1B visa holder.

Amglo's apparent misunderstanding regarding the need to establish that the beneficiary's *position* qualified is reflected in its reliance on only subsection two of section 1184(i). Amglo contends that to prove that the position qualified as a specialty occupation, it had to demonstrate

9

only one of the following: 1) attainment of full state licensure in the occupation where such licensure is required; 2) completion of a bachelor's or higher degree in the specific specialty; or 3) experience in the specialty occupation equivalent to the completion of such a degree coupled with recognition of expertise in the specialty through progressively responsible positions relating to the specialty. 8 U.S.C. § 1184(i)(2). That provision, however, is the part of section 1184(i) that requires the beneficiary to be qualified to perform the specialty position, not the provision upon which CIS was focusing in its request for information, namely section 1184(i)(1), which requires that the specialty occupation itself qualify.

Finally, Amglo argues that neither the INA nor the regulations require the additional evidence that CIS requested. Amglo relies on *Bodeux v. U.S. Immigration and Naturalization Serv.*, 668 F. Supp. 1452 (D. Kan. 1987), to support its argument that CIS may not deny a petition based on the petitioner's failure to submit documentation that is not required. *Bodeux* is, however, distinguishable from this case. The plaintiff in that case sought an extension of his H-1 visa; he was not seeking a new visa. *Id.* at 1453. The regulations in effect at the time stated that a petition for an H-1 extension did not require supporting documents for a visa extension unless the Immigration and Naturalization Service ("INS") requested them. *Id.* Because the INS had not requested any additional documents from the plaintiff, the court held that it could not deny the plaintiff's application based on documents that it had neither required nor requested. *Id.* at 1454.

In this case, by contrast, Amglo was applying for a new H-1B visa, not an extension of Mr. Schulz's existing H-2B visa, which (as discussed earlier) included requirements that do not apply to applications for H-2B visas. In addition, unlike in *Bodeux*, CIS did request additional

10

evidence from Amglo. Amglo did not respond to CIS's request, and the evidence Amglo had previously submitted was insufficient to establish the requirements for an H-1B visa.

The Court agrees with CIS that its request for evidence gave Amglo sufficient notice that it should provide additional support for the H-1B petition. The regulations provide that a request for evidence "will be in writing and will specify the type of evidence required, and whether initial evidence or additional evidence is required . . . sufficient to give the applicant or petitioner adequate notice and sufficient information to respond." 8 C.F.R. § 103.2(b)(8)(4). CIS's request for evidence stated that additional information was necessary, and it specified the particular information requested. Amglo offers no case law, statutory or regulatory support for its contention that CIS must use a particular government form when requesting additional evidence. The notice complied with the regulations, and as a result, the request for evidence was not arbitrary, capricious or an abuse of discretion.

## Conclusion

For the forgoing reasons, the Court denies Amglo's motion for summary judgment [docket no. 17] and grants CIS's motion for summary judgment [docket no. 25]. The clerk is directed to enter judgment in favor of the defendant.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 10, 2008